FILED
CLERK

2:19 pm, Apr 17, 2019

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LUIGI PATACCA,

    Plaintiff,

    -v-

CSC HOLDINGS, LLC,
CABLEVISION SYSTEMS CORPORATION,[1]
And LOUIS MANISCALCO,

    Defendants.
-------------------------------------------------------X
FEUERSTEIN, S., Senior District Judge:

Case No. 16-cv-0679 (SFJ)(ARL)
**Memorandum and Order**

I.    <u>Introduction</u>

    Plaintiff Luigi Patacca ("Plaintiff" or "Patacca") commenced this action against Defendants CSC Holdings, LLC ("CSC"), Cablevision Systems Corporation ("Cablevision"; together with CSC, the "Company") and Louis Mainscalco ("Maniscalco"; together with CSC and Cablevision, the "Defendants"), alleging various claims of discrimination under federal and state law. (*See generally* Compl. (ECF No. 1).) Presently before the Court is the Defendants' motion seeking summary judgment in their favor on all of Plaintiff's claims (hereafter, the "Summary Judgment Motion") (*see* ECF No. 60; *see also* ECF Nos 61-64), which Plaintiff opposes (hereafter, "Opposition" or "Opp'n") (*see* ECF No. 66; *see also* ECF Nos. 65, 67, 68). For the reasons that follow, Defendants' Summary Judgment Motion is GRANTED.

---

[1] In June 2016, Cablevision Systems Corporation was acquired by another entity and is now doing business as Altice USA, Inc. (*See* Defendants' Amended Answer (ECF No. 59) at 1 n.1.) For convenience, the Court will continue to use "Cablevision" to identify the acquired entity.

II.    Background

    A.  Factual Background[2]

        1.  Generally

    Cablevision provides television, phone and internet services to residential and business customers in the New York metropolitan area.  Since many customers rely on Cablevision for these services, it is essential that the Company's system operate at all times.  One of the departments at Cablevision is its Network Operating Center ("NOC"), which ensures the Company's cable network is operating correctly.  Among other things, the NOC is responsible for providing advanced network support, including monitoring the network, responding quickly, efficiently, and effectively to alarms sent from vendor equipment (*e.g.*, routers and switches), identifying and triaging network issues, and fixing network issues.  Cablevision's operations require that the NOC be staffed, whether on-site or remotely, 24 hours per day, seven days per week, throughout the year; this coverage made reliable work attendance essential for NOC staff. Further, in addition to their regular work schedules, certain NOC operators were also scheduled to be on call one week approximately every three weeks.

    As stated in its Employee Handbook, the Company: does not discriminate against the disabled; provides reasonable accommodations to employees with disabilities; and encourages any employee to request a job accommodation if needed.  Cablevision also maintains a medical

---

[2]  Unless otherwise indicated, the facts are taken from Defendants' Rule 56. 1 Statement in support of their Summary Judgment Motion (hereafter, "Rule 56.1 Statement")(*see* ECF No. 61), and Plaintiff's Rule 56.1 Counterstatement (hereafter, "Rule 56.1 Counter")(*see* ECF No. 65). Unless otherwise stated, a standalone citation to a Rule 56.1 Statement or Counterstatement denotes that either the parties have, or the Court has, determined the underlying factual allegation to be undisputed.  Citation to a party's Rule 56.1 Statement or Counterstatement incorporates by reference the documents cited therein.

leave policy, which provides employees with leave pursuant to the Family Medical Leave Act ("FMLA") and other applicable federal, state and local laws.

Plaintiff, a paraplegic who also suffers from lymphedema,[3] was hired by Cablevision in June 1998 as a Tech Support Coordinator.  In September 2000, he accepted a Technician position in the NOC at the Company's Hicksville, New York location.  In April 2006, Plaintiff became a Network Operator in the Radio Frequency Data Network ("RFDN") operations group.  In April 2013, Plaintiff was promoted from an Operator III in the NOC to one of its Senior Operators.  Like other NOC Senior Operators, Plaintiff was generally responsible for monitoring the network according to departmental procedures to ensure continued service to Cablevision's customers.  This could involve, *inter alia*: performing daily administrative duties; supporting maintenances; monitoring, troubleshooting, and break-fixing network infrastructures; triaging and reacting to alarms received for supporting infrastructure, including seeking help from other departments or outside vendors when necessary (in Company parlance, known as "escalating" an issue); documenting system problems; and working closely with other centers and departments.

Maniscalco began his employment with the Company in 2001 as a Technical Support Representative.  In September 2006, he was transferred to a position in the RFDN operations group, at which time he met Plaintiff, as they both worked in the same department.  In 2013, Maniscalco became a manager of the NOC Level Three Network Group.  As a manager, Maniscalco oversaw: two supervisors, Joseph Bourguignon ("Joe B.") and Bartlett Todd ("Todd"); a group lead, Vito Gaudino; and, any consultant working within the group; he was not Plaintiff's direct supervisor.

---

[3] Lymphedema is swelling in an arm or leg caused by a lymphatic system blockage.  *See* Stedman's Medical Dictionary at 1040 (27th ed., Lippincott Williams & Wilkins 2000).

Prior to Maniscalco becoming a NOC manager, Plaintiff had been disciplined by other managers, having received: a verbal warning in 1998 due to inappropriate behavior; a final written warning in 2002; a written reprimand in 2008; a formal written reprimand in 2011 for causing a power outage for over 200 customers; and a written reprimand in 2014. Plaintiff does not allege that any of his other managers discriminated against him.

In Winter 2013-14, there were instances when Plaintiff did not go to work due to inclement weather. He testified that "somewhere around that time" and during a conversation about anticipated weather, Maniscalco made a comment to the effect that he knew what the weather was going to be if Plaintiff called out for work. (*See* Plaintiff's Depo. Tr., 372:11-373:5; *see also id.* at 274:17-275:23.) However, Plaintiff did not recall whether Maniscalco said anything to him about any of the days he took off that Winter. (*See id.* at 373:6-21.) While Plaintiff testified that others laughed when Maniscalco made the comment, he did not recall who those people were. (*See id.* at 375:2-7.) Further, he could not recall any other occasion when Maniscalco made other derogatory or negative comments about Plaintiff's disability. (*See id.* at 286:19-25.)

Having been called into work by Joe B. because of department understaffing, Plaintiff worked on February 2, 2014. During that shift, Plaintiff's wife called him, informing him that she was experiencing labor pains; apparently, her "water broke" while Plaintiff was working that shift. After completing his shift, Plaintiff: first, went home; then, went to the hospital; and, thereafter, was present for the birth of his son.

Beginning in March 2014, Plaintiff made several performance errors. For example, he: escalated a basic issue which he possessed the expertise to resolve; failed to properly investigate a reported video server issue; and failed to follow through in communicating an absence from

work.  (*See* Ex. AA (ECF No. 62-27), *attached to* Hoey Decl.)  Then, on April 24, 2104, Plaintiff

erred by configuring wrong network devices, resulting in a network outage for upwards of

80,000 Cablevision customers.  As a consequence, on April 25, 2014, Maniscalco informed

Plaintiff that, in conjunction with other written warnings, he would be receiving a final written

warning (hereafter, the "Final Warning").  On May 7, 2014, Maniscalco met with Plaintiff to

give him a written warning regarding the March 2014 incidents; however, it was not the Final

Warning.  The same day, Plaintiff went to the Company's Human Resources Department

(hereafter, "HR") and complained to HR personnel Jenny Bartling ("Bartling") of discriminatory

treatment based upon his disability.

On May 12, 2014, because he was not feeling well, Plaintiff informed Maniscalco that he

needed to take time off from work because of health issues; Maniscalco did not object.  On May

13, 2014, Plaintiff began his leave under the FMLA.  One consequence thereof was that

Maniscalco was unable to deliver the Final Warning document to Plaintiff.

Plaintiff's FMLA leave expired on July 23, 2014, but prior to its expiration, Plaintiff

requested an extension.  In assessing that request, which would be an ADA[4] accommodation,

there was communication between HR, Maniscalco, and others regarding whether granting the

extension would be an "undue hardship" on Plaintiff's department.  (*I.e.*, Could the NOC

adequately function without Plaintiff?).  The impetus for that discussion was an unidentified

excerpt regarding ADA accommodations sent in an email thread, which stated, *inter alia*:

"Under the ADA, a qualified individual with a disability may work part-time in his/her current

position, or occasionally take time off, as a reasonable accommodation *if it would not impose an*

---

[4] "ADA" is the commonly used acronym for the Americans with Disabilities Act of 1990, 42
U.S.C. § 12101, *et seq.*

*undue hardship on the employer.*"  (*See* Ex. JJ (ECF No. 62-36 at 5)(emphasis added), *attached to* Hoey Decl.)  As part of the discussion, Maniscalco stated:

> It looks like Luigi was approved for [extended leave].  I am not 100% sure.
>
> I feel like I do have a hardship as I continue to not be able to staff a full team.  I have guys jumping through hoops, changing schedules and such.
>
> I am very vulnerable to not being able to cover shifts if any of my people call in sick.  I have already had missing overnight shifts.
>
> I am not sure if this has been discussed with HR.
>
> If it's a law that we have to accommodate or it just gets approved, we will do the best we can but note we may have continued shifts where we are not able to staff a full team.
>
> We haven't had this occur during the evening shift yet but when we do and an outage breaks, we will be seriously impaired.

(*Id.* at 4.)  Plaintiff's request for additional leave was granted; he returned to work on September 23, 2014.  When Plaintiff returned to work, he submitted a note from his treating physician stating, *inter alia*, that: Plaintiff's impairments did not impact his ability to perform the essential functions of his position; he needed "standard handicap accommodations only"; and he required "wheelchair accessability [*sic*]".  (Ex. EE (ECF No. 62-31 at 5), *attached* to Hoey Decl.)  Also, upon Plaintiff's request, Plaintiff was not scheduled for on-call coverage from his September 2014 return date through the end of the December 2014; however, his request to be switched to a four-day workweek was denied.

Since Plaintiff's FMLA leave in May 2014 prevented Maniscalco from providing Plaintiff with the Final Warning, it was given to Plaintiff by Maniscalco on November 7, 2014. At that time, Maniscalco advised Plaintiff that, going forward, Plaintiff was expected to:  follow department policies and procedures; thoroughly research work issues which arose; use all his

technical expertise and available resources when working on an issue; communicate with management and colleagues; and provide accurate, transparent documentation of all events to ensure the team was best positioned to resolve all issues.

In December 2014, Plaintiff received a mixed review from Todd, with his overall rating being a "Requires Improvement." (*See* Ex. MM (ECF No. 62-39)), *attached to* Hoey Decl.) Indeed, Plaintiff self-rated himself as "Requires Improvement" in four areas of review. (*See id.*) He commented that in the 2014 work-year, he "had some setbacks," for which he believed he was "severely penalized." (*Id.*) Todd acknowledged that Plaintiff "had some setbacks during the course of 2014 which led to two write ups" and his "currently still [being] under a final written warning." He noted that since returning to work, Plaintiff's attitude and focus had improved, but that he needed to continue working on improving in those areas, as well as working on: handling stressful situations; ensuring that he had all the facts before escalating a situation; developing his technical skills with supported products; taking more initiative in improving work processes and the work environment; and, using his skills more consistently. (*See id.*)

Plaintiff had performance issues in 2015. On February 13, 2015, Plaintiff incorrectly performed four out of eight node workups. (*See* Ex. NN (ECF No. 62-46), *attached to* Hoey Decl.) On March 18, 2015, Plaintiff failed to thoroughly investigate and respond to a Sandvine alarm or to provide critical information about it to the appropriate parties (hereafter, "Incident 1"). On March 27, 2015, after being directed to applicable troubleshooting information, Plaintiff provided incorrect information about an interface system, which resulted in the issue being misdiagnosed and a technician being sent to the wrong location (hereafter, "Incident 2"). On April 2, 2015, in response to a corporate client complaint, Plaintiff performed a bare-bones assessment, failed to properly communicate the results of the requested node workup, and then,

when the node workup results were requested, conveyed incomplete results, contrary to node workup protocol (hereafter, Incident 3"). On April 3, 2015, Plaintiff did not follow up on a failed card and failed to set up maintenance for that issue, which is standard procedure that all team members are expected to know (hereafter, "Incident 4"). Plaintiff further failed to fully complete his daily task checks on April 3rd, resulting in an error missed by multiple team members; when the error was brought to Plaintiff's attention, he tried to blame others for it without taking any responsibility for his role in that matter (hereafter, "Incident 5").

A Termination Request outlining the Five Incidents involving Plaintiff, which occurred on March 18 and 27, 2015, and on April 2 and 3, 2015, was submitted on April 21, 2015. Plaintiff was terminated on May 5, 2015. He does not know whether other NOC operators were counseled or written up for similar infractions or whether they were under a final warning.

### B. Procedural History

On September 9, 2016, Plaintiff commenced this action, filing a five-count complaint claiming disability discrimination and retaliation under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA") (*see* Compl. (ECF No. 1), Count I (re: discrimination against CSC and Cablevision), and Count II (re: retaliation against CSC and Cablevision)), discrimination, hostile work environment, and retaliation in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296, *et seq.* ("NYSHRL") (*see id.*, Count III (re: discrimination and hostile work environment against all Defendants) and Count IV (re: retaliation against all Defendants)), and aiding and abetting in violation of NYSHRL § 296(6) (*see id.*, Count V (against Maniscalco)). On May 10, 2016, the Defendants answered Plaintiff's Complaint denying his allegations of discriminatory conduct and raising various affirmative defenses. (*See* Answer, ECF No. 11.) On May 30, 2018 and in response to Defendants'

proposed Rule 11 motion (*see, e.g.*, ECF No. 56), Plaintiff filed an amended complaint (*see* ECF No. 57), which Defendants answered on June 13, 2018, again denying Plaintiff's claims of disability-related discrimination and raising various affirmative defenses thereto. (*See* ECF No. 59). On June 29, 2018, Defendants moved for summary judgment in their favor on all of Plaintiff's causes of action, which Plaintiff opposed.

### C. The Parties' Positions

#### 1. The Defendants' Position

Defendants argue that since Plaintiff admits his May 2015 termination had nothing to do with his disability, he cannot make out the requisite *prima facie* cases supporting the various forms of illegal discrimination he alleges he suffered. Indeed, they contend that many of Plaintiff's allegations are objectively false such that his discrimination claims are advanced in bad faith. Even if that were not so, based on the years of progressive discipline Plaintiff received by a number of different manages, documenting multiple serious performance issues, Defendants had legitimate, non-discriminatory reasons to terminate him. Moreover, Plaintiff has not presented sufficient evidence showing that the Defendants' termination grounds were pretextual and that, but for his disability, Defendants would not have terminated him. Hence, as to this action as a whole, the Defendants are entitled to summary judgment in their favor as a matter of law.

#### 2. The Plaintiff's Position

First, Plaintiff argues that he has established a *prima facie* case of unlawful disability discrimination since, when he was on FMLA, Maniscalco was attempting to prove that he (Plaintiff) was a "hardship" to the Company because of his disability. (*See* Opp'n 1-3, 6-7.) Moreover, Plaintiff asserts that even though the Company puts forth an alleged legitimate reason

for terminating him, that is pretextual (*see id.* at 7-11), and the Company treated Plaintiff differently than other employees it disciplined (*see id.* at 12-13).

Second, Plaintiff contends that after he engaged in various protected activities, *e.g.*, asking for a leave of absence; requesting a modified work schedule; and, complaining about restroom facilities and parking lots, he suffered the ultimate adverse action of being terminated. Hence, he makes out a *prima facie* retaliation case. (*See* Opp'n at 16-19.) He does not address either the Defendants' proffered legitimate, non-retaliatory reason for its action or his ultimate burden of establishing that but for his protected activities, he would not have been terminated.

Third, Plaintiff maintains he was subjected to a hostile work environment because: he was physically obstructed from getting to his work station because of various facility non-compliances (*see id.* at 20-21); of Maniscalco's beratement of Plaintiff due to his disability, which occurred in front of co-workers (*see id.* at 22); and, he was subjected to Maniscalco writing him up for false and minor work incidents (*see id.* at 23-24). Relying on his post-deposition Declaration, Plaintiff contends that there are issues of fact whether the discriminatory work incidents to which he was subjected were pervasive, creating a hostile work environment (*see id.* at 27). For substantially the same reasons, Plaintiff argues his aiding and abetting claim against Maniscalco should survive the Summary Judgment Motion. (*See id.* at 30.)

III.    Discussion

    *A. Applicable Law*

        1. Motion for Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Tolbert v. Smith*, 790 F.3d

427, 434 (2d Cir. 2015); *Kwong v. Bloomberg*, 723 F.3d 160, 164-65 (2d Cir. 2013); *Viola v. Philips Med. SYS. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (holding summary judgment appropriate only where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law).  No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the nonmovant, that no rational jury could find in the nonmovant's favor.  *See Chertkova v. Conn. Gen'l Life Ins., Co.*, 92 F.3d 81, 86 (2d Cir. 1996).  Although the evidence is viewed in favor of the non-moving party, *see Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "the mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [fact-finder] could reasonably find for the [non-movanat]." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005)(internal alterations and quotation marks omitted).  It is insufficient to "rely on conclusory allegations or unsubstantiated speculation" to defeat a summary judgment motion.  *Id.* (Internal quotation marks omitted).  Instead, when the moving party has documented particular facts in the record, "the opposing party 'must set forth specific facts showing that there is a genuine issue for trial,'" *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)(quoting Fed. R. Civ. P. 56(e)), which requires going beyond the allegations of the pleadings.  *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted); *see also Daeisadeghi v. Equinox of Great Neck, Inc.*, No. 16-cv-1698, 2019 WL 331637, at *4 (E.D.N.Y. Jan. 25, 2019)("If the nonmoving party submits evidence which is 'merely colorable,' legally sufficient opposition to the motion for summary judgment is not present." (quoting *Anderson*, 477 U.S. at 249)).

In employment discrimination cases, "'an extra measure of caution is merited' in granting summary judgment because 'direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions.'" *Barella v. Village of Freeport*, 16 F. Supp.3d 144, 155 (E.D.N.Y. 2014) (quoting *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006); further citation omitted); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001). Yet, even in employment discrimination cases, to resist a summary judgment motion, "a plaintiff must provide more than conclusory allegations . . . ." *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008); *see also Chioke v. Dep't of Educ. of City of N.Y.*, No. 15-cv-1845, 2018 WL 3118268, at * 7 (E.D.N.Y. June 25, 2018) (quoting *Holcomb*). Indeed, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997); *see also Daeisadeghi*, 2019 WL 331637, at *5 (quoting *Stern*; collecting cases).

2. Consideration of Affidavits in Opposition to Summary Judgment Motion

> [A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)(examining omission in four-day deposition); *Martin v. City of New York*, 627 F. Supp. 892, 896 (E.D.N.Y. 1985)(examining direct contradiction between deposition and affidavit). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma*, 410 F.2d at 578. Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not "genuine" issues for trial. *Id.*

*Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996); *see also Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)( "[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity."); *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995)("[I]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." (quotations and citation omitted)); *Pierre v. Hilton Rose Hall Resort & Spa*, No. 14-cv-3790, 2016 WL 4742281, at *10 (E.D.N.Y. Sept. 12, 2016)(finding plaintiff unable to produce competent evidence to defeat defendant's summary judgment motion where plaintiff's affidavit contradicted his deposition testimony); *Ciliberti v. Int'l Bhd. of Elec. Workers Local 3*, No. 08-cv-4262, 2012 WL 2861003, at *11 (E.D.N.Y. July 10, 2012)(rejecting plaintiff's attempt to create disputed issues of fact via affidavit, when his prior deposition testimony foreclosed any such disputes).  Where inconsistencies exist between a non-movant's affidavit and corresponding deposition testimony, which inconsistencies the non-movant party makes no effort to reconcile or otherwise explain, a court may disregard those statements.  *See Jeffrey v. Montefiore Med. Ctr.*, No. 11-cv-6400, 2013 WL 5434637, at *15 (S.D.N.Y. Sept. 27, 2013)(collecting cases).

### 3.  ADA Claims

#### (a.)  *Discrimination*

Claims brought pursuant to the ADA

> are analyzed under the three-step burden-shifting framework originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973).  *See, e.g., McBride v. BIC Consumer Products Mfg. Co.,* 583 F.3d 92, 96 (2d Cir. 2009) (ADA); *see also Regional Economic Community Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 48-49 (2d Cir. 2002) (applying *McDonnell Douglas* framework to claims of intentional discrimination under the ADA . . .).  Accordingly, a

> plaintiff alleging discrimination under [the ADA] must establish a
> prima facie case; if he does so, then ''the employer must offer
> through the introduction of admissible evidence a legitimate non-
> discriminatory reason for the [adverse action]; and the plaintiff
> must then produce evidence and carry the burden of persuasion
> that the proffered reason is a pretext.'' *Sista v. CDC Ixis North
> America, Inc.,* 445 F.3d 161, 169 (2d Cir. 2006). ''[T]he ultimate
> burden rests with the plaintiff to offer evidence sufficient to
> support a reasonable inference that prohibited [disability]
> discrimination occurred.'' *Woodman v. WWOR–TV, Inc.,* 411 F.3d
> 69, 76 (2d Cir. 2005) (quotation marks and citation omitted).

*Castro v. City of N.Y.*, 24 F. Supp.3d 250, 260 (E.D.N.Y. 2014); *see also Graves v. Finch Pruyn & Co., Inc.*, 353 F. App'x 558, 560 (2d Cir. 2009). "In order to establish a *prima facie* case of disability discrimination under the ADA, the plaintiff must show that: (1) the defendants are subject to the ADA; (2) he is disabled within the meaning of the ADA; (3) he can perform the essential functions of his job with or without reasonable accommodation; and (4) he was subject to an adverse employment action because of his disability." *Adams v. Master Carvers of Jamestown, Ltd.*, 91 F. App'x 718, 720 (2d Cir. 2004)(citing *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 149-50 (2d Cir. 1998)).

### (b.) *Retaliation*

"Retaliation claims are analyzed under the three-step *McDonnell Douglas* framework." *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp.3d 232, 267 (E.D.N.Y. 2015)(citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) ("Claims for retaliation [under the ADA] are analyzed under the same burden-shifting framework established for Title VII cases."); further citation omitted).

> If the plaintiff is able to establish a prima facie case of
> discrimination,[5] the burden then shifts to the defendant to set

---

5 To present a *prima facie* case of retaliation, a plaintiff-employee:

forth "some legitimate, nondiscriminatory reason" for the
complained-of conduct. *McDonnell Douglas*, 411 U.S. at 802; *see
also Fincher* [*v. Depository Trust & Clearing Corp.*], 604 F.3d
[712,] 720 [(2d Cir. 2010)] (stating that where the plaintiff
succeeds in establishing a prima facie case, "then the presumption
of retaliation arises and the employer must articulate a legitimate,
non-retaliatory reason for the action that the plaintiff alleges was
retaliatory"). Where the defendant articulates such a reason, the
burden shifts back to plaintiff to establish that "but for the
protected activity, [she] would not have been terminated." *Moore
v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-3625 (MKB), 2013
WL 3968748, at *14 (E.D.N.Y. July 30, 2013); *see also Univ. of
Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534
(2013)(stating that a plaintiff "must establish that his or her
protected activity was a but-for cause of the alleged adverse action
by the employer.").

*Graham v. Three Village Cent. Sch. Dist.*, No. 11-cv-5182 (JFB), 2013 WL 5445736, at *21

(E.D.N.Y. Sept. 30, 2013) (first set of brackets added).

> A plaintiff may prove that retaliation was a but-for cause of an
> adverse employment action by demonstrating weaknesses,
> implausibilities, inconsistencies, or contradictions in the
> employer's proffered legitimate, nonretaliatory reasons for its
> action. From such discrepancies, a reasonable juror could
> conclude that the explanations were a pretext for a prohibited
> reason. "But-for" causation does not require proof that retaliation
> was the only cause of the employer's action, but only that the
> adverse action would not have occurred in the absence of the
> retaliatory motive.

---

must establish that (1) the employee was engaged in an activity
protected by the ADA, (2) the employer was aware of that activity,
(3) an employment action adverse to the plaintiff occurred, and (4)
there existed a causal connection between the protected activity
and the adverse employment action.

*Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2002); *see also Castro*, 24
F.Supp.3d at 268 (quoting *Weissman*). "[A] plaintiff may establish the causal connection
indirectly by showing that the protected activity was closely followed by the retaliation, or
directly by showing evidence of retaliatory animus." *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d
1033, 1039 (2d Cir. 1993) (Title VII retaliation case)(internal quotation marks and further
citation omitted).

*Dudley v. N.Y.C. Hous. Auth.*, No. 14-cv-5116, 2017 WL 4315010, at *19 (S.D.N.Y. Sept. 25, 2017 )(quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013); internal citations and quotation marks omitted).

### 4. NYSHRL Claims

#### (a.) *Disability Discrimination*

"Under the NYSHRL, it is an unlawful discriminatory practice for an employer to discharge an individual because of a disability, which is a 'physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques.' N.Y.Exec. law §§ 292(21), 296(1)(a)." *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010); *see also* NYSHRL § 296(1)(a) ("It shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's . . . disability . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."). The Second Circuit has instructed that courts are to apply the *McDonnell Douglas* burden shifting analysis to NYSHRL employment discrimination claims. *See id.; see also Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016); *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp.2d 386, 402 & n.9 (S.D.N.Y. 2013)("Disability discrimination claims brought pursuant to the ADA and the NYSHRL are also governed at the summary judgment stage by the burden-shifting analysis established for Title VII claims in *McDonnell Douglas* . . . .") (citation omitted). Hence, a plaintiff needs to demonstrate:

> (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.

*Geras v. Hempstead Union Free Sch. Dist.*, 149 F. Supp.3d 300, 324 (E.D.N.Y. 2015) (citations omitted).

> An adverse employment action is a "materially adverse change in the terms and conditions of employment [that] is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Fairbrother v. Morrison*, 412 F.3d 39, 56 (2d Cir. 2005). "Examples of materially adverse changes include termination of employment, a demotion evidence by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.*

*Demoret*, 451 F.3d at 151.

> The remaining steps of the burden-shifting analysis for disability discrimination claims are the same as those for Title VII claims. *See McDonnell Douglas*, 411 U.S. at 802-04, 93 S. Ct. 1817; *see also Hicks*, 509 U.S. at 506-08, 113 S. Ct. 2742; [*Texas Dep't of Cmty Affairs v.*] *Burdine*, 450 U.S. [248,] 254-56, 101 S. Ct. 1089 [(1981)]. For a disability discrimination claim under the ADA, a plaintiff must demonstrate that her disability was at least "a motivating factor" for the adverse employment action. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 336-37 (2d Cir. 2000) (holding that 'the mixed-motive analysis available in the Title VII context applies equally to cases brought under the ADA"); *see also Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011)(summary order).

*Wesley-Dickson*, 973 F. Supp.2d at 402-03 (internal footnote omitted).

### (b.) *Hostile Work Environment*

"[H]ostile work environment claims under the NYSHRL are treated the same as such claims under federal law" *Bermudez v. City of N.Y.*, 783 F. Supp.2d 560, 587 (S.D.N.Y. 2011)(collecting cases). Since "[d]isability discrimination claims brought pursuant to the ADA and the NYSHRL are . . . governed at the summary judgment stage by the burden-shifting analysis established for Title VII claims in *McDonnell Douglas*," *Wesley-Dickson*, 973 F. Supp.2d at 402, "[c]ourts apply the same standard to hostile work environment claims under Title VII [as they do to] the NYSHRL." *Maines v. Last Chance Funding, Inc.*, No. 17-cv-5453,

2018 WL 4558408, *9 (E.D.N.Y. Sept. 21, 2018) (citation omitted); *see also Smith v. Town of Hempstead Dep't of Sanitation*, 798 F. Supp.2d 443, 451 (E.D.N.Y. 2011)(same).

### (c.) *Retaliation*

Like discrimination claims, retaliation claims under the NYSHRL are analyzed using the *McDonnell Douglas* burden-shifting framework. *See Spencer v. Int'l Shoppes, Inc.*, 902 F. Supp.2d 287, 293 (E.D.N.Y. 2012)(stating that retaliation claims under Title VII and NYHRL are treated similarly); *see also, generally, Guzman v. News Corp.*, No. 09-cv-9323, 2013 WL 5807058, at *19 (S.D.N.Y. Oct. 28, 2013). "Since courts presented with ADA claims employ the same analytical framework as used for Title VII claims, . . . where those claims cannot be maintained under the ADA, they likewise cannot be maintained under the NYSHRL." *Fox. v. Costco Wholesale Corp.*, 239 F. Supp.3d 564, 585 (E.D.N.Y. 2017), *aff'd in part, vacated in part, and remanded*, 918 F.3d 65 (2d Cir. 2019)(affirming district court's judgment dismissing plaintiff's retaliation claims). The converse is, likewise, true: the "violation of one necessarily implies the violation of the other." *See, e.g., Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66, 70 n.2 (2d Cir. 2004)(regarding age discrimination claims under the ADEA and under the NYSHRL); *see also, e.g., Wei v. Anthem, Inc.*, No. 16-cv-468, slip op. at 27 (E.D.N.Y. Sept. 4, 2018)(same); *Gingold v. Bon Secours Charity Health Sys.*, 768 F. Supp.2d 537, 543 n.6 (S.D.N.Y. 2011)(where the Court determines that a plaintiff has a disability under the ADA, that plaintiff's NYSHRL claim "'survives or fails on the same basis' as his ADA claim" (citation omitted)).

### (d.) *Aiding and Abetting*

The NYSHRL allows for individual liability where a defendant aided and abetted the unlawful discriminatory acts of others. *See* N.Y. Exec. Law § 296(6); *see also Gorman v.*

*Covidien, LLC*, 146 F. Supp.3d 509, 521-22 (S.D.N.Y. 2015) (quoting *EEOC v. Suffolk Laundry Servs., Inc.*, 48 F. Supp.3d 497, 523 (E.D.N.Y. 2014)).  Thus, "a co-worker who 'actually participates in the conduct giving rise to a discrimination claim'" can be "held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff." *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)(quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995)[6]); *see also Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011)("[W]hile an individual defendant with supervisory control may not be held personally liable under Title VII, an individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he actually participates in the conduct giving rise to a discrimination claim."  (internal quotations and citations omitted)).  "Aiding and abetting liability requires that the aider and abettor share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose." *Brice v. Sec. Operations Sys., Inc.*, No. 00-cv-2438, 2001 WL 185136, at *4 (S.D.N.Y. Feb. 26, 2001)(internal quotation marks and citations omitted).  "Consequently, to find that a defendant actually participated in the discriminatory conduct requires a showing of direct, purposeful participation." *Id.* (internal quotation marks and citation omitted).  Stated differently, there must be sufficient evidence of the individual defendant's connection to the alleged discrimination to warrant the imposition of NYSHRL aider and abettor liability.  *See Guzman*, 2013 WL 5807058, at *22.  It is axiomatic, then, that the predicate to imposing individual aider and abettor liability under § 296(6) is the finding of impermissible discrimination.

---

[6] *Tomka* was abrogated on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

*B. The Instant Case*

    1. <u>Plaintiff's Attempt to Create Disputed Facts</u>

In an attempt to defeat the Defendants' Summary Judgment Motion, Plaintiff submitted a declaration upon which he relies to dispute Defendants' Rule 56.1 Statement of Facts. (*See* ECF No. 68 (hereafter, "Plaintiff's Declaration").) While the 126-paragraph, June 4, 2018 declaration was made under penalty of perjury, it was also made after Plaintiff's depositions in this case. (*See id.* at 14 (declaration under penalty of perjury "[e]xecuted on June 4, 2018").) In the Declaration, Plaintiff has made no effort to reconcile or otherwise explain the inconsistencies that exist between his declarations therein and his corresponding deposition testimony. Relatedly, Plaintiff's Declaration is void of any citations whatsoever; rather, it is replete with bald, unsubstantiated statements. (*See id., in toto*.)

It is well-settled law in this Circuit that a party is prohibited "from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony." *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013); *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)("[F]actual allegation that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts h[is] own prior deposition testimony."); *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995)(same); *see also Colvin v. Keen*, No. 13-cv-3595, 2016 WL 5408117, at *3 (E.D.N.Y. Sept. 28, 2016) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."). Thus, to the extent Plaintiff relies on his Declaration to created disputed facts to thwart Defendants' Summary Judgment Motion, that attempt is unavailing.

Further, Local Civil Rule 56.1(c) states:

> Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion *unless specifically controverted* by a corresponding numbered paragraph in the statement required to be served by the opposing party.

Local Civil Rule 56.1(c)(emphasis added); *see also, e.g.*, *Bryant v. S. Country Cent. Sch. Dist.*, No. 14-cv-5621, 2017 WL 1216553, at *12-14 (E.D.N.Y. Mar. 31, 2017)(finding statements not specifically controverted by nonmovant deemed admitted). In many instances, Plaintiff has failed to specifically controvert Defendants' fact statements. For example, Plaintiff claims disputes on the basis that Defendants have mischaracterized deposition testimony, but careful examination of such allegedly disputed statements often reveals no more than quibbles, not the requisite specific contraversions to the Defendants' stated facts (*See, e.g.*, Rule 56.1 Counter, Responses ¶¶ 39, 49, 50, 51, 54-56, 68-69, 74, 77, 81, 105, 174, 190, 200, & 207.) Other times, Plaintiff's supposed disputes with Defendants' statements, again often identified as mischaracterizations, are his thinly veiled attempts to embellish the Defendants' statements and/or provide rationales for the stated facts. (*See, e.g., id.* at ¶¶ 14, 31-32, 34-35, 43, 53, 57-58, 60-65, 76, 85, 98, 108, 110, 113, 123, 126, 139, 149, 158, 164, 167, 169, 171, 175, 177, 191, 199, & 204.) Yet, embellishment and explanation are not contraversion and, therefore, are insufficient to create factual disputes. Moreover, Local Civil Rule 56.1(b) provides Plaintiff with a mechanism to present additional facts to explain a statement, by providing "additional paragraphs containing a separate, short concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried;" yet, Plaintiff has not done this. As to some other facts which Plaintiff disputes, the cited evidence in support of the alleged disputes does not evince any dispute with or contradiction of Defendants' statements (*see, e.g., id.* at ¶¶

18,22-24, 27-28, 47-48, 66,[7] 72, 88, & 111).  In other instances, while asserting a dispute, Plaintiff merely proceeds to reiterate Defendants' material fact, which must be deemed admitted since a reiteration is no more than repeating that which has been said, and not controverting it (*see, e.g.*, *id.* at ¶¶ 4, 104, 106, 147, 164, & 183).  Finally, some facts which Plaintiff disputes are immaterial to the issues under consideration (*see, e.g.*, *id.* at ¶¶ 17, 22, 25, 29, 33, 36, 42, 45, 52, 70, 75, 78, 83, 84, 86, 90-91, 94, 102, 162, 168, & 204).[8]  Hence, the Court is presented with a largely undisputed record.

2. Plaintiff's Disability Discrimination Claims

Plaintiff contends that, via an email campaign to upper management, Maniscalco was trying to establish that Plaintiff was a "hardship" to the NOC department and to Cablevision because of Plaintiff's disability, and this demonstrates unlawful disability discrimination.  (*See* Opp'n at 5-7.)  He argues that the delayed delivery of the Final Warning, interrupted by Plaintiff's FMLA and ADA-accommodation leaves, evinces Maniscalco's renewed attempt to have Plaintiff terminated after Maniscalco was unable to show Plaintiff was a "hardship".  (*See id.* at 8-9.)  Finally, Plaintiff asserts that Maniscalco's "weather" remark was close in time to his termination and, "coupled with a string of discriminatory actions" shows discrimination.  (*See id.* at 10.)  The Court does not agree.

As to the "email" argument, the dialog between HR and management in assessing Plaintiff's request for an extended leave of absence, which was being considered as an ADA

---

[7]  Although cited by Plaintiff, page 126 of Maniscalco's deposition transcript is not included in Plaintiff's submission to the Court.

[8]  The Court notes that these categorizations are made by way of example and not all of Plaintiff's Rule 56.1 Counter Responses have been included.  Further, many of these Responses could have been designated to more than one category.

accommodation since Plaintiff's leave under the FMLA would be expiring, was not discriminatory. Simply, a request was made, and it was being evaluated. Part of the evaluation process was considering whether granting leave under the ADA would cause an undue hardship to the Company since, if it would, the Company may have been obligated to offer an alternative accommodation. *See* 29 C.F.R. § 1630.2(o)(4), (p)(2) (identifying several factors to be considered when determining whether a proposed accommodation imposes an undue hardship on an employer, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business). Thus, in seeking Maniscalco's input on the "undue hardship" inquiry, Cablevision was complying with its obligations under the ADA. As Defendants aptly argue, "[I]t would truly turn the law on its head if this Court found that a manager who was trying to understand his obligations under the ADA to extend a leave, was somehow violating the ADA." (Reply at 3; *see also id.* at 5 (citing *O'Hara v. Mem. Sloan Kettering Cancer Ctr.*, No. 99-cv-2658, 2000 WL 1459798, at *4 S.D.N.Y. Sept. 29, 2000, *aff'd* 27 F. App'x 69 (2d Cir. 2001) (giving instruction to document a plaintiff's job performance problems to protect employer from discrimination suit did not show plaintiff's supervisors were motivated by discriminatory animus).) Indeed, Maniscalco's use of the term "hardship" in his email response is not surprising since: the topic under consideration was granting extended leave as an ADA accommodation; the phrase "undue hardship" is an ADA term of art, *see* 29 C.F.R. §1630.2(p)(1): and, showing an "undue hardship" is an exception to providing an ADA accommodation. Without more, Maniscalco's use of the work "hardship" when discussing the staffing issue he was facing does not connote a nefarious discriminatory intent on his part. Rather, Maniscalco's complaint of a "hardship" was the opposite of what Plaintiff argues here; it was not that Maniscalco viewed Plaintiff as a hardship to the department, and thereby prompting

Maniscalco's supposed campaign of trying to get rid of plaintiff, but that *not* having Plaintiff on staff was causing the department a hardship in being further understaffed. (*See, e.g.*, Maniscalco Depo. Tr., 111:16-113: 11 (testifying about the department being understaffed and that "Luigi Patacca clearly was not a hardship.").) He was putting management on notice that, assuming the extended leave was approved, there was a possibility that the NOC department would have difficulties if it was faced with an emergency situation because it was short-staffed. (*See* Email, Ex. JJ (ECF No. 62-36), *attached to* Hoey Decl. ("If it's the law that we have to accommodate or it just gets approved, we will do the best we can but note we may have continued shifts where we are not able to staff a full team. We haven't had this occur during the evening shift yet but when we do and an outage breaks, we will be seriously impaired."). In other words, the "hardship" was not Plaintiff, but being understaffed. Thus, the Defendants are correct that "evidence of [their] compliance with their legal obligations cannot create an inference of discrimination." (Reply at 6.)

As to the "delayed delivery" argument, it holds little merit. It is undisputed that Plaintiff was told on April 25, 2014 that he would be receiving the Final Warning due to contributing to the network outage affecting 80,000 customers and his other, prior written warnings, *i.e.*, Incidents 1 through 5. (*See* Rule 56.1 Statement, ¶ 140.) Thus, Plaintiff knew about the Final Warning before the Company knew he would be lodging a disability discrimination claim with HR in May 2014. The chronology of these events cannot establish discriminatory animus. Moreover, to the extent that Plaintiff would have the Court find discriminatory animus in the delayed administration of the Final Warning, occurring after his return from his leaves, the email from Maniscalco to HR about finalizing that Warning, which Plaintiff proffers in support of this argument (*see* Opp'n at 9 (citing Ex. J)), fails to demonstrate any discriminatory intent. (*See* Ex.

J (ECF No. 67-10) ("Jenny, [n]ow that [Plaintiff] is back in the office, I have put together a Final Written warning document. Can you review?").) Plaintiff appears to imply that because he went on medical leave before the Final Warning was issued, the Company was somehow foreclosed from issuing it after he returned and, therefore, its delayed administration of same must demonstrate discrimination. However, other than offering Maniscalco's deposition testimony that he (Maniscalco) had the ability to tell HR he did not believe a final warning was warranted (*see* Opp'n at 9 (citing Maniscalco Depo. Tr., 152:2-25)), Plaintiff offers no evidence that the Company had a deadline by which a final warning must be issued (*e.g.*, a Company policy or procedure defining the timeframe within which a warning must be issued). In any event, Maniscalco further testified that the decision to issue the Final Warning had been made before Plaintiff went out on FMLA leave (*see* Maniscalco Depo. Tr., 151:9-152:3; *see also id.* at 153:8-10), but Plaintiff's intervening leave halted the administrative process of having it issued (*see id.* at 150:16); in this instance, discriminatory intent cannot be imputed by that sequence of events. In sum, Plaintiff's disagreement with his delayed discipline, without more, does not satisfy Plaintiff's ultimate burden of showing that the Defendants intentionally discriminated against him. *See, e.g., Adam v. Glen Cove Sch.*, No. 06-cv-1200, 2008 WL 508689, *9 (E.D.N.Y. Feb. 21, 2008); *see also Brown v. Soc'y for Seaman's Children*, 194 F. Supp.2d 182, 191 9E.D.N.Y. 2002) ("[A]lthough plaintiff felt she had been treated unfairly, . . . [t]here simply is no basis in the record from which a rational juror could find that the reasons given for plaintiff's termination . . . were false or a pretext for discrimination."); *Taylor v. Polygram Rec.*, No. 94-cv-7689, 1999 WL 124456, at *10 (S.D.N.Y. Mar. 8, 1999)("[Plaintiff's] fundamental disagreement with the conclusions her supervisor drew from incidents which she admits occurred, and her subjective

belief that they should not have reflected badly on her performance . . . , is not evidence that her supervisor's appraisals were a sham, invented to mask discrimination.").

As to the "weather comment"[9] argument, it fails to carry Plaintiff's pretext burden. First, Plaintiff testified that Maniscalco's comment was made in the winter of 2013-2014. (*See* Plaintiff's Depo. Tr., 372:11-373:5.) To the extent Plaintiff attempts to create a disputed fact as to when the comment was made by relying on his post-deposition Declaration, that attempt is unavailing. (*See supra* at Part III(A)(2) & (B)(1) ("sham" affidavit will not be considered when ruling on summary judgment motion).) The competent evidence shows the "weather" comment was made more than one year before Plaintiff's termination; as such, it is too temporally remote to evince discriminatory intent. *See Adam v. Glen Cove Sch.*, No. 06-cv-1200, 2008 WL 508689, *7 (E.D.N.Y. Feb. 21, 2008) ("Verbal comments may constitute direct evidence of discrimination when made by a decision-maker in the adverse employment action, *and* where there is a close nexus between the comments and the action." (emphasis added)) (citations omitted); *see also id.* at *8 (finding remark made more than one year before termination too "distant in time from the allegedly discriminatory behavior" to support claim of discriminatory-based discharge) (collecting cases). Second, and even if this comment was made in the 2014-15 Winter, it lacks any association to the Company's termination decision and is insufficient to overcome the Defendants' legitimate, non-discriminatory reason for terminating Plaintiff. *See, e.g., Caronia v. Hustedt Chevrolet*, No. 05-cv-3526, 2009 WL 90929, *6 (E.D.N.Y. Apr. 1,

---

[9] To the extent Plaintiff relies on the statement of Joe B. (*see* Opp'n at 10 (citing Plaintiff's Declaration, ¶26 ("Joe B[.] stated to me that Louis Maniscalco was 'out to get me'."))), that is inadmissible hearsay which the Court will not consider. *See, e.g., Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 71 (2d Cir. 2000) ("[S]tatements reported to the plaintiff[] and not supported by affidavits are inadmissible hearsay"); *Pamphile v. Tishman Speyers Props., L.P.*, No. 03-cv-5964, 2006 WL 1806505, at *5 n.2 (E.D.N.Y. June 29, 2006)("Hearsay evidence is inadmissible on a motion for summary judgment.")(citations omitted).

2009) (finding stray remarks in the workplace without a demonstrated nexus to the adverse action will not defeat a summary judgment motion).

To the extent Plaintiff also argues that he was "treated differently than others non-handicapped employees" (*see* Opp'n at 13), that argument fails.  First, he testified that he did not know how others were treated.  (*See* Plaintiff's Depo. Tr., 441:2.)  Second, to make out a *prima facie* disparate treatment claim, "[i]n addition to identifying similarly situated employees who are subject to the same performance evaluation and discipline standards, a plaintiff must also show that those employees engaged in acts of comparable seriousness but were not punished as severely as plaintiff."  *See Risco v. McHugh*, 868 F. Supp.2d 75, 100 (S.D.N.Y. 2012) (citation omitted).  Plaintiff fails to demonstrate how he was treated differently from other NOC Senior Operators.  (*See* Opp'n at 13 (citing Plaintiff's Declaration, ¶¶89-92).)  Plaintiff's contention that "Defendants had the option to move Plaintiff [] to a different tier just as they did with non-disabled employee Greg Neely" (Opp'n at 13 (citing Bartling Depo. Tr., 39:5-40:18[10]), is unpersuasive since Plaintiff fails to introduce any evidence showing how Neely and he were similarly situated such that the Company's choice was discriminatory.  *See Risco*, 868 F. Supp.2d at 100.  Considering the void of evidence supporting a disparate treatment *prima facie* case, the Court need not consider Plaintiff's argument about Neely to meet his ultimate burden of establishing discriminatory animus.

---

[10] Excerpts from Bartling's deposition transcript are found at Plaintiff's Ex. D (ECF No. 67-4), but do not include the cited transcript pages.

3. Plaintiff's Retaliation Claims[11]

Regarding his retaliation causes of action, by failing to fully address those claims in his Opposition, limiting his arguments to his *prima facie* case, but failing to oppose Defendants' contention that they had a legitimate, non-discriminatory reason for their action as being pretextual (*see* Opp'n at 16-19); *see also Nassar*, 133 S. Ct. at 2534 (stating that a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"); *Moore*, 2013 WL 3968748, at *14 (stating that where defendant articulates legitimate, non-discriminatory reason for its actions, burden shifts back to plaintiff to establish that "but for the protected activity, he would not have been terminated."), Plaintiff is deemed to have waived his retaliation claims. *See, e.g., Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016)("Even where abandonment by a counseled party is not explicit, a court may infer abandonment from the papers and circumstances viewed as a whole." (internal quotation marks and citation omitted)); *Neurological Surgery, P.C. v. Travelers Co.*, 243 F. Supp.3d 318, 329 (E.D.N.Y. 2017)(deeming an argument waived because it was not addressed in a party's opposition brief); *see also Petrisch v. HSBC Bank USA, Inc.,* No. 07-cv-3303, 2013 WL 1316712, at *17 (E.D.N.Y. Mar. 28, 2013)(collecting cases holding that where party fails to address arguments in opposition papers on summary judgment motion, the claim is deemed abandoned); *Bryant v. S. Country Cent. Sch. Dist.*, No. 14-cv-5621, 2017 WL 1216553, at *19 (E.D.N.Y. Mar. 31, 2017)(failing to pursue

---

[11] The Defendants contend that Plaintiff cannot make out a *prima facie* case of retaliation. (*See* Memo at 21; *see also* Reply at 21-22 (asserting Plaintiff cannot establish any causal connection between a protected activity and his termination).)

theory in support of claim, claim is deemed waived); *Robinson v. Am. Int'l Grp., Inc.*, No. 08-cv-1724, 2009 WL 3154312, at *4 & n.65 (S.D.N.Y. Sept. 30, 2009) (collecting cases where claims deemed abandoned for failing to oppose arguments raised in summary judgment motions), *aff'd* 396 F. App'x 781 (2d Cir. 2010); *see also, e.g.*, *Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH v. Salzman*, 969 F. Supp.2d 278, 290 (E.D.N.Y. 2013)("a Court need not entertain an argument that was not briefed")(citing *Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 228 n.6 (S.D.N.Y. 1990)).

Even if that were not so, Plaintiff has not put forth any admissible evidence to rebut Defendants' claim of a legitimate, non-discriminatory reason for terminating Plaintiff. As significantly, Plaintiff admitted at deposition both that he committed most of the errors which occurred in March and April 2015 (that led to the Final Warning) and that those errors were not related to or caused by his disability. (*See* Rule 56.1 Statement, ¶¶ 172, 174, 176, 182, 184.) Such admissions in conjunction with Plaintiff's failure to adduce any evidence in the record that retaliatory animus was the true reason for his discharge compels the conclusion that no rational trier of fact could find in Plaintiff's favor on his retaliation causes of action. *See, e.g., McAllister v. Price Rite*, No. 3:09-cv-1888, 2013 WL 5187036, at *14 (D. Conn. Sept. 13, 2013) (finding plaintiff failed to adduce evidence of retaliatory animus when he expressly admitted he violated company policy, which violation the reason for his termination).

### 4. Plaintiff's Hostile Work Environment Claim

Plaintiff raises four bases for claiming a hostile work environment: (1) he was "physically obstructed from entering the building and using the bathroom due to noncompliance of the facilities"; (2) Maniscalco's "repeatedly berat[ing] Plaintiff about his disability" in front of other employees; (3) he was "repeatedly" written up by Maniscalco for "minor infractions

*caused by Plaintiff's deteriorating health*" in Maniscalco's efforts to have Plaintiff terminated; and (4) Defendants "repeatedly" failing to accommodate Plaintiff's disability as required under the ADA.  (Opp'n at 20 (emphasis added).)

The Second Circuit has recently recognized that hostile work environment claims are actionable under the ADA.  *See Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019). The *Fox* Court instructed that "[a] plaintiff alleging a hostile work environment claim under the ADA . . . 'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment.'"  *Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). This Court assumes, *arguendo*, that Plaintiff believed the work environment at Cablevision was abusive, thereby satisfying the requisite subjective component.  *See id.* ("the victim must subjectively perceive the conduct as abusive").  The open issue, therefore, is "whether the work environment was objectively abusive, and, if so, whether the abusive conduct can be imputed to [Cablevision]".  *Id.* at 75; *see also id.* at 74 ("[T]he misconduct shown also must be 'severe or pervasive enough to create an objectively hostile or abusive work environment.'" (quoting *Alfanso*, 294 F.3d at 374)).

(a.)  *Alleged Physical Obstruction*

Regarding his claim of being obstructed from entering Cablevision's buildings, Plaintiff testified that at both the Hicksville and Bethpage facilities, he received assistance from either security officers or co-workers in entering and exiting the buildings.  (*See* Plaintiff's Depo. Tr., 99:9-106:26.)  Thus, Plaintiff's own testimony undercuts his claim of obstruction and Company disregard.  (*See also id.* at 146:49, 147:6-11.)  As to the one instance where Plaintiff testified he fell trying to transfer into his car, slipping on sand in the parking lot, he further testified that he

was quickly helped by a co-worker and was not injured.  (*See id.* at 99:2-6.)  To the extent this incident occurred after Plaintiff complained about the sand, he offers no evidence as to when he made his complaint.  (*See* Plaintiff's Declaration ¶¶80, 81.)  The temporal ambiguity of this evidence, which lacks a timeframe, precludes an assessment that the sand issue was some discriminatory misconduct on the Company's part.  Moreover, on the record presented, the sand-related fall appears to be an isolated incident that was not severe.  (*See* Plaintiff's Depo. Tr., 98:23-99:8 (testifying to slipping because of the sand, but not being injured and thereafter getting help into his car).)

Further, Plaintiff asserts that he "complained about the inaccessibility of the parking lot" caused by various unauthorized vehicles parking in handicapped parking spots, "but Management did nothing to correct the issue."  (Opp'n at 21.)  He contends that this unauthorized parking, "prevent[ed] Plaintiff from access" (*id.*); yet, his deposition testimony shows otherwise.  (*See* Plaintiff Depo. Tr., 236:13-25; 11-15.)  Indeed, as noted, Plaintiff testified that he was not prevented from getting into the Company's buildings.  Similarly, his claim that the Company did not address his parking lot concerns is unsupported by the cited evidence.  (*See* Opp'n at 21 (citing Plaintiff's Declaration, ¶66 ("There were multiple times when cars without handicapped decals were parked in the handicapped spots at Bethpage.  Car services would frequently park in the handicapped spots while they waited to pick up executives.  Regular employees would also park there.").)  Moreover, to the extent Plaintiff argues that "Management failed to take any action regarding Plaintiff's [inaccessible parking space] complaints" (Opp'n at 21), he has failed to cite any evidence that he lodged such complaints, to whom or when those complaints were made, thereby thwarting a finding that the Company's alleged inaction was objectively unlawful misconduct.  At best, without more, others impermissibly parking in

handicapped parking spots are random events not directed at the plaintiff, which is not enough to support a hostile environment claim. *See, e.g., Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995) ("[E]mployer liability for a hostile environment created by coworkers . . . attaches only when the employer has 'either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" (quoting *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir. 1992)).

Plaintiff's argument that chairs were in the aisles blocking his access to his work station to show an objectively hostile work environment (*see* Opp'n at 21) is unavailing. He relies on his post-deposition Declaration (*see id.* (citing Plaintiff Declaration, ¶57)) which cannot be used to create a disputed issue. (*See supra* at p. 20.) Moreover, as the Defendants counter, "[d]uring two days of depositions, Plaintiff was asked to set forth all the ways in which he was 'obstructed' from going to work due to his disability. (Patacca Depo. Tr., 146:4-147:11). He never identified the alleged issue with the chairs." (Reply at 26 (citing *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 213 (2d Cir. 2014); *Vuona v. Merrill Lynch & Co., Inc.*, 919 F. Supp2d 359, 391 (S.D.N.Y. 2013)).) A "plaintiff may not create material issues of fact by submitting affidavits that dispute their own prior testimony" regarding issues which have been thoroughly or clearly explored. *World Trade Ctr.*, 758 F.3d at 213 (further citation omitted). There is no evidence to substantiate this argument other than Plaintiff's bald assertion about the chairs. Indeed, Plaintiff testified that he could not recall any instance when Defendants physically obstructed him from going to work. (*See* Plaintiff Depo. Tr., 146:4-9, 13-18.)

*Alleged Berating*

In support of his beratement argument, *to wit*, that "Maniscalco established a pattern of criticizing Plaintiff to his face [and] berating his disability" (Opp'n at 22), Plaintiff relies on: Maniscalco's one "weather" comment made in the winter of 2013-2014, and the non-admissible evidence of: Maniscalco's allegedly laughing at Plaintiff's maneuverings through chair-blocked aisles to get to his work station (Plaintiff's Declaration, ¶ 57[12]); and, in response to Plaintiff complaining about the carpeting at work, Stephen Kramer ("Kramer") allegedly commenting it would "certainly help [Plainitff] get [his] cardio" as to which Maniscalco allegedly laughed (*id.* at ¶55). Defendants first argue one stray comment does not create a pattern. (Reply at 26.) They next argue that the "evidence" upon which Plaintiff relies "is not supported in the record", "directly contradict his sworn deposition testimony," and is "hearsay". (*Id.* (citing Reply, Section I(D)(2)(a) (Defendants' "Sham Affidavit" Argument)).) The Court agrees.

Since the Court has already found that the "weather" comment was, at most, an isolated incident (*see supra* at p. 26), Plaintiff's attempt to churn that statement into a severe and pervasive occurrence fails. As stated above, Plaintiff's reliance on his post-deposition Declaration is misplaced as it cannot be used to create disputed issues of fact. (*See supra* at p. 20.) *See also, e.g.*, *Vuona*, 919 F. Supp2d at 391 (finding that where deponent had opportunity to address relevant issue during deposition, later declaration testimony directly contradicting deposition testimony would not be considered in opposing summary judgment). It is no different

---

[12] Other than indicating these events occurred while at the Hicksville location, which would have been before Plaintiff went on FMLA leave in May 2014 (since Plaintiff's department had moved to the Bethpage facility while he was on leave), Plaintiff does not indicate any temporal context for when he allegedly complained to Maniscalco. Similarly, other than Maniscalco, Plaintiff does not identify the supposed offending people involved.

here; in two days of depositions, during which Plaintiff was questioned about, *inter alia*, his claims of a hostile work environment, he never raised either the Kramer comment[13] (*see* Plaintiff's Decl., ¶55) or Maniscalco's supposed laughing reactions (*see id.*).  To the extent the Plaintiff would support his beratement argument as a means of establishing an objectively hostile or abusive work environment, by relying on the proffer of paragraphs 55 and 57 of his post-deposition Declaration, that reliance is misplaced.

### (c.) *Alleged Write-ups for Minor Infractions*

Plaintiff asserts that "Maniscalco purposely fabricated situations within the NOC in which Plaintiff would struggle to succeed *on account of his disability*."  (Opp'n at 23 (citing Plaintiff's Depo. Tr., 322:1-328:7, 328:2-15[14] (further citation omitted) (emphasis added).)  However, "[a] hostile work environment claim requires more than just a hostile work environment—it requires proof that hostile acts were based on plaintiff's protected status (*e.g.*, his disability), rather than other reasons."  *Marini v. Costco Wholesale Corp.*, 64 F. Supp.3d 317, 326 (D. conn. 2014)(citing *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010)).  Plaintiff provides no such proof.  Rather, the evidence upon which Plaintiff relies in support of his "minor infractions" contention is inadmissible hearsay (*e.g.*, Joe B. telling Plaintiff that "Maniscalco was actively trying to prevent [Plaintiff] from taking additional time off" Opp'n at 24) or has not been provided to the Court.[15]  To the extent Plaintiff tries to protract his reliance

---

[13]  The Court notes this comment is provide without any temporal context.

[14]  This cited excerpt of Plaintiff's deposition transcript is not included in Plaintiff's submission to the Court.  (*See* Ex. B (ECF No. 67-2).)

[15]  The cited excerpt of Plaintiff's deposition transcript in support of an incident when Maniscalco supposedly "docked Plaintiff's pay" is not included in Plaintiff's submission to the Court.  (*See id.* (citing Plaintiff's Depo. Tr., 155:18-24); *cf.*, Ex. B (ECF No. 67-2).)

on Maniscalco's "hardship" comment to advance this "minor infractions" argument, for the reasons articulated (*see supra* at p. 22-24), that effort is equally ineffective.

### (d.) *Alleged Failures to Accommodate*

Finally, Plaintiff makes an alternative argument, which appears to be based upon a failure to accommodate theory, that "[o]n at least two occasions, as a result of complaints that fell on deaf ears, the Defendants forced Plaintiff . . . to defecate on himself by ignoring Plaintiff's complaints regarding the bathrooms." (Opp'n at 27 (citing Plaintiff's Decl. at ¶118 ("I defecated upon myself multiple times before I was able to get home because the bathrooms at both the Hicksville and Bethpage locations were non-compliant with the ADA, and the non-compliance was not corrected even after I complained about it.")).) Plaintiff contends: he "explained to . . . Maniscalco and/or . . . Todd[] that he needed to leave Cablevision to use the bathroom," but "rather than report Plaintiff's difficulties, . . . Maniscalco edited the Plaintiff's time sheet" (Opp'n at 27 (citing Plaintiff's Depo. Tr., 155:18-22)); he complained to a "Donna Cadero regarding the inaccessibility of bathrooms in the past," but that "complaint never reached Paul Ryan[, Senior Vice President of Corporate Administration,[16]] or his department" (*id.* (citing Ryan Decl., ¶40 ("My department never received a report or complaint from [Plaintiff] that he could not use the restrooms in the Hicksville office or the Bethpage Headquarters."")); and, Maniscalco knew Plaintiff used a "larger wheelchair" causing "inaccessibility" in "reach[ing] the bathrooms," but "nothing was done" (*id.* (citing Maniscalco Depo. Tr., 132-36)).

While not clear, it appears Plaintiff is attempting to show severe discriminatory conduct that was physically humiliating. *See, e.g., Lewis v. Blackman Plumbing Supply, L.L.C.*, 51 F.

---

[16] *See* Ryan Decl. (ECF No. 63), ¶1; *see also id.* at ¶2 (stating Ryan is responsible for overseeing "Cablevision's building and real estate holdings, including design and construction").

Supp.3d 289, 309 (S.D.N.Y. 2014)("Whether a workplace is a hostile work environment under the provisions of the ADA requires consideration of the totality of the circumstances[,] including the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance," (internal quotation marks omitted; further citations omitted)). It seems that in doing so, he is conflating this argument with one that would be brought to support a failure to accommodate cause of action, which has not been made in this case. In any event, Plaintiff has not proffered evidence of any discriminatory conduct that led to the defecation incidents. According to his own testimony, on one occasion when Plaintiff left work to go home to use the bathroom, he told his lead (*i.e.*, Todd) that it was because he was having stomach issues and not that the bathrooms were difficult for him to use or were inaccessible to him. (*See* Plaintiff's Depo. Tr., 150:3-5 ("I would ask to leave. I just said my stomach. It was my stomach and I have to leave.").) He was not denied permission to leave. To the extent his time sheet was adjusted to reflect early dismissal, that alone is insufficient to demonstrate discriminatory conduct, let alone that such conduct should be imputed to the Company. Similarly, Plaintiff's argument that he made some unspecified past complaint to HR personnel Donna Cadero regarding the bathrooms, but that Ryan never learned of it, is unpersuasive; without more this argument fails to demonstrate either discriminatory conduct evincing a hostile work environment or a specific basis upon which the Company should be liable for such unlawful discriminatory conduct. *See Fox*, 918 F. 3d at 74 (plaintiff must show "a specific basis exists for imputing the objectionable conduct to the employer") (citing *Alfanso*, 294 F.3d at 373). Finally, to the extent Plaintiff asserts that Maniscalco knew about Plaintiff's use of a larger wheelchair, which allegedly interfered with Plaintiff's access to work bathrooms, but did not react to that

information, the cited material in support of this argument is not included in the record. Hence, this unsupported contention is no more than speculation or conjecture, which will not defeat Defendants' Summary Judgment Motion. *See generally, e.g., Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 621 (2d Cir. 2016) ("Generally, 'speculation by the party resisting the motion will not defeat summary judgment." (quoting *Kulal v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)).

### 5. Plaintiff's Aiding and Abetting Claim

Plaintiff recognizes that individual liability under the NYSHRL can be imposed only "if the employer is first found to have engaged in discrimination." (Opp'n at 28.) Without any citation to the record, he contends Maniscalco "was Plaintiff's supervisor and maintained direct authority and control over Plaintiff's personnel decisions," and "Maniscalco very clearly 'actually participated in the conduct giving rise to the discrimination claim,' as he was the individual who committed a significant portion of the discriminatory conduct *as alleged in the Amended Complaint*." (*Id.* (emphasis added).) Thus, he baldly contends that "the myriad of [c]omplaints [he] made in an attempt to resolve the facility's non-compliance and Mr. Maniscalco's discriminatory conduct would be sufficient to hold Mr. Maniscalco individually liable as an aidor [*sic*] and abettor for both his individual conduct and that of other entities about which Plaintiff issued verbal or written complaints." (Opp'n at 30.) Plaintiff's aider-and-abettor claim is unsubstantiated and must fail.

First and as discussed, *supra*, on the record presented, there is no predicate finding that Defendants CPC and Cablevision engaged in unlawful disability discrimination against Plaintiff; therefore, a finding of aider-and-abettor liability as to Maniscalco would be baseless. *See, e.g., Nicholson v. Staffing Auth.*, No. 10-cv-2332, 2011 WL 344101, at 2 (S.D.N.Y. Feb. 1, 2011)("A

predicate requirement of aider-and-abettor liability is finding of primary liability as to the employer."); *Gallo v. Alitalia—Linee Aeree Italiane—Scoieta per Azioni*, 585 F. Supp.2d 520, 546 (S.D.N.Y. 2008)("Before accessorial liability can be found as to an alleged aider and abettor, the plaintiff must first establish liability as to the employer/principal." (citation omitted)).

Second, when opposing a summary judgment motion, one cannot rely upon the allegations in one's complaint to defeat the motion. *See, e.g.*, *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) ("[W]ith a motion for summary judgment adequately supported by affidavits, the party opposing the motion cannot rely on allegations in the complaint, but must counter the movant's affidavits with specific facts showing the existence of genuine issues warranting a trial." (citing Fed. R. Civ. P. 56(c))); *Elliott v. Gouverneur Tribune Press, Inc.*, No. 13-cv-055, 2014 WL 12598275, at *2 (N.D.N.Y. Sept. 29, 2014) ("[I]t is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings." (citing *Celotex Corp., v. Catrett*, 477 U.S. 317, 324 (1986); further citation omitted)). Yet, that is what Plaintiff has done as to this cause of action.

Third, it is not the role of the Court to search the summary judgment record for evidence supporting a nonmovant's opposition. *See N.Y.S. Teamsters Conf. Pension & Ret. Fund. v. Express Servs., Inc.*, 426 F.3d 640, 648-49(2d Cir. 2005)(recognizing authority of district courts to institute local rules governing summary judgment submissions, which permits courts "to efficiently decide" such motions "by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'" (further citations omitted)); *Ford v. Ballston Spa Cent. Sch. Dist.*, Nos. 05-cv-1198, 05-cv-1199, 2008 WL 697362, at *3 (N.D.N.Y. Mar. 13, 2008) (same). While Plaintiff made several arguments in support of his aider-and-abettor cause of action, he did not cite to any evidence in the record supporting those arguments.

For example, there is no citation to evidence substantiating that: Maniscalco "maintained direct authority and control over Plaintiff's personnel decisions" (*see* Opp'n at 29); Maniscalco "was the individual who committed a significant portion of the discriminatory conduct alleged in the Amended Complaint" (*id.*); or the Plaintiff made a "myriad of Complaints . . . in an attempt to resolve the facility's non-compliance," presumably with the ADA (*see id.* at 30). Plaintiff had the opportunity to proffer evidence which would support finding factual disputes warranting the need for a jury trial on his aider-and-abettor cause of action; he chose not to do so.

\* \* \*

In sum, since on the record presented the Plaintiff fails to "point to evidence that reasonably supports a finding of prohibited discrimination," the Defendants are "entitled to summary judgment." *James v. N.Y. Racing Ass'n*, 233 F.3dc 149, 154 (2d Cir. 2000). The Court has considered the Plaintiff's remaining arguments and finds them to be without merit.


IV.    Conclusion

Accordingly, after drawing all inferences and resolving all ambiguities in favor of the Plaintiff, but finding that no rational jury could find in his favor on his five causes of action, IT IS HEREBY ORDERED that Defendants' Summary Judgment Motion is GRANTED in its entirety; the Clerk of Court is directed to enter judgment in favor of Defendants and, thereafter, close this case. The April 18, 2019 Pretrial Conference is marked off the Court's calendar.


SO ORDERED this 17th day of April 2019 at Central Islip, New York.

/s/ *Sandra J. Feuerstein*

Sandra J. Feuerstein
United States District Judge